REQUESTED BY: Mr. Alfonza Whitaker, Executive Director, Nebraska Equal Opportunity Commission
You have requested an Attorney General's Opinion which addresses the issue of whether prison inmates working for a private venture located at the Nebraska State Penitentiary are considered "employees" under the meaning of the Nebraska Fair Employment Practice Act.
This issue arose when a number of prison inmates sent a letter to the Nebraska Equal Opportunity Commission complaining of discrimination at a private industry venture located at the Nebraska State Penitentiary named TEK. Inmates who work for TEK perform their work at the penitentiary. Inmates are required by statute to perform some work during the course of their incarceration.
It is not clear whether Nebraska courts would consider prison inmates who work at the state penitentiary to be "employees" covered by the Nebraska Fair Employment Practice Act. The statutory definition of "employee" is vague and circular. Nebraska courts have not yet construed the definition of "employee" in a prison labor context. Several federal appeals courts (as well as some other states' courts) have considered this issue. If Nebraska courts adopt an approach similar to that of the federal courts, it is likely that prison laborers would not be considered "employees" under the Nebraska Fair Employment Practice Act.
The Nebraska Fair Employment Practice Act (Nebraska Revised Statutes Sec. 48-1101 et seq.) only applies to those individuals who are considered "employees" under the Act. Neb. Rev. Stat. Sec. 48-1102(7) defines "employee" as an ". . . individual employed by an employer." The vagueness and circularity of this definition make it, by itself, of little use to anyone attempting to determine the applicability of the Act.
Nebraska courts have not discussed the definition of "employee" within the specific context of prison labor. However, in at least one case, the Nebraska Supreme Court has considered the general meaning of that term under the Act. In City of FortCalhoun v. Collins, 243 Neb. 528, 500 N.W.2d 822 (1993), the court considered whether volunteer firefighters were "employees" within the meaning of the Act. In determining that volunteer firefighters were not "employees" under the Act, the court enunciated two criteria for determining whether an individual is an "employee." Collins, 243 Neb. at 534. "Employees" must be paid by an employer and their work must be controlled by an employer. Id. Applying this test, it is likely that prison inmates would be considered "employees" under the Act because they are paid (either by the private venture or the state) and their work is controlled (either by the private venture or the state). However, it is unlikely that the courts would apply precisely the same test for prison inmates that it did for volunteers. Collins did not purport to provide a test that could be expanded beyond the particular facts of that case. It is likely that the courts would, when considering the status of prison inmates, develop and apply a test tailored to the particular fact pattern at issue.
In Collins, the court noted that the Nebraska Fair Employment Practice Act is patterned after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Collins,243 Neb. at 532. Thus, "it is appropriate to consider federal court decisions construing the federal legislation." Id. Although Nebraska courts have not considered the definition of "employee" in the prison labor context, a number of federal appeals courts have. Even though federal courts have not categorically excluded prison inmates from the definition of "employee," Burleson v.State of California, 83 F.3d 311, 313 (9th Cir. 1996), a substantial majority of courts has determined that, under most fact patterns, inmates are not "employees." It is important to note that most of these cases deal with the definition of "employee" not under Title VII, but under the Federal Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. However, the definition of "employee" under FLSA is substantially similar to that of Title VII, and it is likely that Nebraska courts would also find federal court interpretations of this statute helpful in construing the Nebraska Fair Employment Practice Act.
There are three federal cases that suggest that prison inmates who engage in labor are "employees." In Watson v.Graves, 909 F.2d 1549 (5th Cir. 1990), the court found that inmates working for a construction company were "employees" under the statute. In Watson, however, the inmates were on work release. They were picked up by the contractor and taken away from the prison to the construction site. While they were at the construction site they were unguarded and under the control of the contractor. The inmates were not required to participate in this work and they were paid directly by the contractor. The relevant facts relating to the Nebraska inmates would seem to clearly distinguish them from the inmates in Watson. The Nebraska inmates are not on work release and do not leave the penitentiary to perform their work: TEK is located within the penitentiary. While working, the inmates are under the control and supervision of prison officials. Also, the Nebraska inmates are required, pursuant to statute, to work. The fact that they might have a choice of jobs (perhaps choosing TEK instead of another entity) does not matter, as long as they are required to do some job. See Burleson, 83 F.3d at 314.
In Carter v. Dutchess Community College, 735 F.2d 8 (2nd Cir. 1984), the court also suggested that an inmate might be considered an "employee" under the statute. However, the court did not conclude that the inmate was an "employee." It merely reversed a district court ruling that inmates are categorically excluded from the definition of "employee," and remanded for a consideration of the particular facts of the case. On remand, the case was never resolved on the merits. See Danneskjold v.Hausrath, 82 F.3d 37 (2nd Cir. 1996). Any value that Carter
had for inmates trying to secure "employee" status was undermined by the holding in Danneskjold. In that case, the Second Circuit modified the test in Carter and categorically excluded many kinds of prison labor from the status of employment.
Baker v. McNeil Island Corrections Ctr., 859 F.2d 124 (9th Cir. 1988) is a case that, if followed by Nebraska courts, would tend to suggest that the Nebraska inmates should be considered "employees" under the Act. That case involved a Title VII claim by a prison inmate who claimed he was denied a job in a prison library because of his race. The Baker court reversed the district court's dismissal of the action for failure to state a claim, and remanded for consideration of the particular facts. Therefore, the decision in Baker suggests that some courts may determine that an inmate is an "employee" under Title VII, under the proper fact pattern.
Despite these cases that suggest that a prison inmate may be an "employee," a substantial majority of cases finds that inmates are not "employees" (mostly involving FLSA, rather than Title VII, claims). These cases generally find no employment relationship for one or both of two reasons. First, the work performed is part of the inmate's punishment/rehabilitation; it is not meant to be anything more than that. Second, some courts contend that an employment relationship can only emerge from a freely bargained-for exchange; because prison labor usually does not result from a freely negotiated contract, no employment relationship exists.
In Williams v. Meese, 926 F.2d 994 (10th Cir. 1991), the court determined that an inmate was not an "employee" under Title VII, and therefore, could not bring a Title VII claim. The court concluded that whatever work was performed did not arise from an employment relationship but from a penological one: "Although his [inmate's] relationship with defendants may contain some elements commonly present in an employment relationship, it arises `from [plaintiff's] having been convicted and sentenced to imprisonment in the [defendants'] correctional institution. The primary purpose of their association [is] incarceration, not employment.'" Id. at 997. Similarly, in Gilbreath v. CutterBiological, Inc., 931 F.2d 1320 (9th Cir. 1991), the court found that prison inmates working at a privately owned plasma treatment center were not "employees."
In nearly all of the FLSA cases, courts have determined that prison inmates are not "employees" under the statute. In these cases, courts generally held that mandatory labor was part of a penological and rehabilitative structure unrelated to any employment relationship: ". . . the economic reality of the relationship between the worker and the entity for which work was performed lies in the relationship between prison and prisoner. It is penological, not pecuniary." Hale v. State of Arizona,993 F.2d 1387, 1395 (9th Cir. 1993).
The courts have also reasoned that inmates performing mandatory labor are not "employees" because their labor is not the result of the bargained-for exchange out of which an employment relationship may emerge. "Prisoners are essentially taken out of the national economy upon incarceration. When they are assigned work within the prison for purposes of training and rehabilitation, they have not contracted with the government to become its employees. Rather, they are working as part of their sentences of incarceration." Vanskike v. Peters, 974 F.2d 806
(7th Cir. 1992). In Henthorn v. Department of Navy,29 F.3d 682, 686 (D.C. Cir. 1994), the court also focused on the contractual nature of employment in saying that, in order for an inmate to achieve "employee" status, he must have "freely contracted with a non-prison employer to sell his labor."
Courts reached similar results (i.e., no "employee" status for prison laborers) in the following cases: McMaster v. Stateof Minnesota, 30 F.3d 976 (8th Cir. 1994); Burleson, supra,83 F.3d 311 (9th Cir. 1996); Danneskjold, supra, 82 F.3d 37 (2nd Cir. 1996); Franks v. Oklahoma State Industries, 7 F.3d 971
(10th Cir. 1993); Morgan v. MacDonald, 41 F.3d 1291 (9th Cir. 1994); and Nicastro v. Reno, 84 F.3d 1446 (D.C. Cir. 1996).
The conclusion that prison laborers are not "employees" because they cannot freely contract coincides with existing Nebraska law governing the general requirements for creating an employment relationship. Generally, Nebraska courts have held that an employment relationship must be the result of a contract between the parties. In Meyer v. State Farm Mut. Auto. Ins.Co., 224 N.W.2d 770, 774, 192 Neb. 831, 837 (1975), the court stated: "The relationship of master and servant is a contractual relationship." Similarly in Stephens v. Celeryvale Transport,Inc., 286 N.W.2d 420, 424, 205 Neb. 12, 18-19 (1979), the court noted that "[t]he relationship of employer and employee . . . arises from the contract between the parties. . . . Whether the ultimate issue is workmen's compensation coverage, liability for acts of a servant, or some other matter, the question is, what was the real agreement of the parties?" Also, in Eden v.Spaulding, 359 N.W.2d 758, 763, 218 Neb. 799, 806 (1984), the court determined that "whether the parties believed they were creating a master-servant relationship is an important guideline" in determining whether such a relationship exists. Applying these principles to the Nebraska inmates, it is arguable that the inmates could not be considered "employees" under Nebraska law because as prisoners required to work as part of their sentences, they are not in a position to freely contract for employment. Their labor is not the result of a mutual assent after a bargained-for exchange; rather, it is a statutorily imposed obligation over which they have no control.
It is important to note that most of these cases deal with determining whether a particular relationship is that of employment or an independent contract. As such, the courts may choose not to apply these principles in determining whether prison laborers are "employees." However, it is arguable that these principles, useful in determining whether a person is an "employee" or an "independent contractor," would also be useful in determining whether a person is an "employee" or merely a convict required to perform labor as part of his or her sentence, with no "employee" status attached.
In a case before the Nebraska Worker's Compensation Court, the court ruled that a prison inmate who was working for Cornhusker State Industries, which was a division of the Nebraska Department of Correctional Services at the time of the inmate's injury, was not an employee as defined by the Worker's Compensation statute. Specifically, the court found that there was no contract of hire and that the inmate was involuntarily sentenced to a prison term at hard labor rather than entering into a voluntary contract of hire that would make him an employee within the meaning of Neb. Rev. Stat. 48-115. Raul Cariaga v.State of Nebraska, Department of Correctional Services, Docket 99, Number 223 (Nebraska Worker's Compenstation Court, 1993). In that decision, the court noted that the inmate/plaintiff was not producing goods and services to the general public, but rather was performing services for his sentence at hard labor to the Cornhusker State Industries, which was a division of the Department of Corrections. Id. As in the cases previously cited, the Nebraska Worker's Compensation Court focused on the penological nature of the employment environment and on the lack of a freely contracted employer-employee relationship to find that the inmate/plaintiff was not an "employee" under the Worker's Compensation statute.
In conclusion, because the statutory definition of "employee" is unclear, and because Nebraska courts have not yet addressed this issue as it applies to the Nebraska Fair Employment Practices Act, it is not entirely clear whether inmate laborers would be considered "employees" under the Act. However, the Nebraska Supreme Court has stated that because the Nebraska Fair Employment Practice Act is patterned after Title VII of the Civil Rights Act of 1964, it is therefore appropriate to consider federal court decisions construing federal legislation when confronted with issues that arise under the Nebraska statute. An examination of the federal cases and the above-cited Nebraska Worker's Compensation case which address the employment status of prison inmates supports the conclusion that prison laborers are not "employees" under the Nebraska Fair Employment Practices Act because of the penological nature of prison work programs. Further, the notion that prisoners are not "employees" because they cannot freely contract coincides with Nebraska court decisions regarding the existence of "employee" status in other contexts. Therefore, it would be appropriate for Nebraska courts to apply the same principle (i.e., employment arises from contract) to determine that prison laborers are not "employees" under the Nebraska Fair Employment Practice Act.
Sincerely,
 DON STENBERG Attorney General
 Suzanna Glover-Ettrich Assistant Attorney General
APPROVED BY:
Don Stenberg 
Attorney General